[Cite as *Smith v. Javitch Block, L.L.C.*, 2021-Ohio-3344.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KHADIJA SMITH,                               :

    Plaintiff-Appellee,              :              No. 110154

    v.                                       :

JAVITCH BLOCK, L.L.C., ET AL.,        :

    Defendants-Appellants.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** September 23, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-935178

---

### *Appearances:*

The Misna Law Firm, LLC, and Anand N. Misra; and Robert S. Belovich Attorney LLC, and Robert S. Belovich, *for appellee.*

Javitch Block, L.L.C., Michael D. Slodov, and James Y. Oh, *for appellants.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Javitch Block, L.L.C., Anthony Barone II, and Erica Kravchenko (collectively "Javitch") appeal the trial court's decision denying a motion to compel arbitration, which is based on a credit cardholder agreement originally entered

between Khadija Smith and Synchrony Bank.  For the following reasons, we affirm the decision of the trial court and remand for further proceedings.

{¶ 2} Smith opened a J.C. Penney branded credit card account through Synchrony Bank toward the end of 2013.  At the time, Smith received monthly billing statements to and remitted payments from an address in Parma Heights, Ohio — 6410 Stumph Road, Apt. 203, Cleveland, Ohio 44130 ("Stumph Road").  Ultimately, Smith failed to make payments on the account, which was closed, and the outstanding balance of $559.86 charged off.   There are several permanent provisions of the account agreement under which Smith and Synchrony Bank were operating.

{¶ 3} Under the section heading "IMPORTANT INFORMATION ABOUT THIS AGREEMENT" (boldface deleted), Smith was advised that Synchrony Bank "may sell, assign or transfer any or all our rights or duties under this Agreement of your account" without notice.  Immediately after the assignment clause, the written agreement included a section titled "RESOLVING A DISPUTE WITH ARBITRATION" (boldface deleted).  That provision provided as follows:

> Please read this section carefully.  If you do not reject it, this section will apply to your account, and most disputes between you and us will be subject to individual arbitration.  This means that: (1) neither a court nor a jury will resolve any such dispute; (2) you will not be able to participate in a class action or similar proceedings; (3) less information will be available; and (4) appeal rights will be limited.

The clause further described the scope of the arbitration clause, including a provision that permitted the parties to litigate individual cases in a small claims

court and that no small claims litigation waives the right to arbitration.[1]  Further, the parties agreed that if "either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents, and/or J.C. Penney Corporation if it relates to your account."  There is no dispute that "you and us" refers respectively to Smith and Synchrony Bank; the relevant choice-of-law provision provides that Utah law controls; and the arbitration agreement arises solely under the Federal Arbitration Act ("FAA").

{¶ 4}  In August 2017, Synchrony Bank sold and assigned Smith's account to Portfolio Recovery Associates, L.L.C. ("PRA").  The extent of the assignment of rights was set forth in a separate document that was produced under seal.  A year after the assignment, August 2018, PRA initiated a collection action in Cleveland Municipal Court to collect the unpaid balance and interest, serving Smith at her last known address at Stumph Road.  A default judgment was entered in favor of PRA in the amount of $743.86, and that amount was recovered through garnishment proceedings.  Six months after the satisfaction of judgment was entered in January 2020, Smith filed a motion to vacate the judgment, claiming that Cleveland Municipal Court lacked jurisdiction over the claim since she claimed to live in Parma Heights, Ohio.  The relief was granted, and PRA returned the garnished funds.

---

[1] Smith does not make any claims about the validity of such a clause, but instead summarily claims that Javitch waived the arbitration provision by filing the small claims action.  Since the contractual terms control, we need not consider the waiver argument. App.R. 16(A)(7).

{¶ 5} That was not the only collections action with which Smith was involved at the time. In *Capital One Bank (USA) NA v. Smith*, 2020-Ohio-1614, 154 N.E.3d 240 (8th Dist.), the panel noted a similar fact pattern. In March 2018, the creditor filed a complaint against Smith in Parma Municipal Court using the Stumph Road address as Smith's last known residence. *Id.* at ¶ 2. A default judgment was entered against Smith, and the action on garnishment proceeded in April 2019. *Id.* at ¶ 3. Before the garnishment hearing, however, Smith executed a notarized, sworn affidavit attesting to the fact that in March 2018, she resided at 3844 West 117th Street, Cleveland, 44111 and did not "have a residence in Parma Heights[.]" Smith further claimed that she "did not learn of the existence" of the Parma case until receiving a notice of garnishment. *Id.* at ¶ 6. Relying solely on Smith's affidavit, the panel concluded that the trial court erred in denying a motion for relief from judgment since the undisputed evidence demonstrated that Smith did not receive service of the complaint at the Stumph Road address because she did not reside there. *Id.* at ¶ 18-20.

{¶ 6} Following the reopening and dismissal of PRA's action against Smith, Smith filed a complaint under Ohio's Consumer Sales Practices Act against Javitch based on its representation of PRA and the filing of the complaint against Smith in Cleveland Municipal Court. According to Smith, Javitch filed an action against her in a court that lacked jurisdiction over the matter since she resided in Parma Heights, undisputedly outside Cleveland Municipal Court's territorial jurisdiction. Javitch, relying on the *Smith* decision, cited to Smith's sworn affidavit in which she

claimed that she did not reside at the Stumph Road address, but actually lived within the territorial jurisdiction of Cleveland Municipal Court. Before addressing the merits of that claim, however, Javitch asserted its right to arbitrate the dispute as an agent of PRA, which was assigned an interest in Smith's account. The trial court denied Javitch's motion.

{¶ 7} Both the FAA and Ohio's Arbitration Act "provide that a court shall stay proceedings and compel arbitration when 'an issue is referable to arbitration under an agreement in writing for arbitration.'" *Sinley v. Safety Controls Technology, Inc.*, 8th Dist. Cuyahoga No. 109065, 2020-Ohio-4068, ¶ 15, quoting R.C. 2711.02 and 2711.03; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.2001), citing 9 U.S.C. 3, 4. Arbitration, as a matter of contract, is not required if the party against whom the enforcement is sought did not contractually agree to submit to arbitration. *Id.*, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 1998-Ohio-172, 687 N.E.2d 1352. Thus, the preliminary question when determining whether to stay an action and compel arbitration is "whether the parties actually agreed to arbitrate the issue and not the general policy goals of the arbitration statutes." *Id.*, citing *UH Rainbow Babies & Children's Hosp. v. Caresource*, 8th Dist. Cuyahoga No. 106151, 2018-Ohio-2839, ¶ 5.

{¶ 8} The standard of review for a decision granting or denying a motion to stay proceedings pending arbitration is generally abuse of discretion. *EMCC Invest. Ventures, LLC v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶ 18-19, citing *River Oaks Homes, Inc. v. Krann*, 11th Dist. Lake No. 2008-L-166, 2009-

Ohio-5208, ¶ 41. "A trial court's grant or denial of a stay based solely upon questions of law, however, is reviewed under a de novo standard." *Id.*, citing *Buyer v. Long*, 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, ¶ 6; *Pantages v. Becker*, 8th Dist. Cuyahoga No. 106407, 2018-Ohio-3170, ¶ 7. "Although there is a presumption in Ohio favoring arbitration, parties cannot be compelled to arbitrate a dispute they have not agreed to submit to arbitration." *Pantages* at ¶ 7, citing *Natale v. Frantz Ward, L.L.P.*, 8th Dist. Cuyahoga No. 106299, 2018-Ohio-1412, ¶ 9.

{¶ 9} The question of whether a controversy is referable to arbitration under the provisions of a contract is a question for a court to decide upon examination of the contract. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 171, 517 N.E.2d 559 (8th Dist.1986). "When confronted with an issue of contract interpretation, the role of the court is to give effect to the intent of the parties to that agreement. The court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Further, "[i]n interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).

{¶ 10} There is no dispute that Smith originally agreed to arbitrate "any dispute or claim between" Smith and Synchrony Bank, "its affiliates, agents and/or

J.C. Penney Corporation, Inc. if it relates to [Smith's] account." Further, there is no dispute that Smith agreed to permit Synchrony Bank to "sell, assign or transfer any and all of [its] rights or duties under the Agreement or [Smith's] account." Accordingly, there are two questions pertinent to the parties' dispute: whether Synchrony's assignment of rights to PRA under Smith's agreement includes the right to enforce the arbitration agreement; and whether Javitch, as agent of the assignee, is entitled to enforce the arbitration agreement.

{¶ 11} With respect to the first issue, in general, the assignment of an account that contains the provision permitting a creditor to "assign its rights and duties" under the cardholder agreement necessarily includes the assignee's right to enforce the arbitration agreement within the original cardholder agreement. *James v. Portfolio Recovery Assocs., LLC,* N.D.Cal. No. 14-cv-03889-RMW, 2015 U.S. Dist. LEXIS 20786, 14 (Feb. 20, 2015); *Brooks v. N.A.R., Inc.,* N.D.Ohio No. 3:18-cv-362, 2019 U.S. Dist. LEXIS 86230 (May 22, 2019); *Mark v. Portfolio Recovery Assocs., LLC,* N.D.Ill. No. 14-cv-5844, 2015 U.S. Dist. LEXIS 54498, 3 (Apr. 27, 2015). There is an exception to this general proposition, and that exception forms the basis of Smith's defense.

{¶ 12} As other courts have recognized, in rendering a conclusion to the question of whether an assignment of debt includes an assignment of the right to compel arbitration focuses on the scope and extent of the assignment itself. *Pounds v. Portfolio Recovery Assocs., LLC,* 851 S.E.2d 423, 429 (N.C.App.2020), citing *Lester v. Portfolio Recovery Assocs., LLC,* N.D.Ala. No. 1:18-CV-0267-VEH, 2018

U.S. Dist. LEXIS 115527 (July 11, 2018). Whether explicitly or implicitly stated within the assignment agreement, the focus of the inquiry is on the breadth of the assignment itself. For example, in *Lester*, the debtor defaulted on credit card debt originally owned by Synchrony Bank, which sold the debt to PRA. *Id.* at 2. The original cardholder agreement included an arbitration provision identifying the FAA and Utah law as the relevant choice of law. *Id.* In determining if PRA could compel arbitration, the court reviewed the pertinent language of the assignment between Synchrony Bank and PRA, which limited the extent of the assignment to "the receivables" under the plaintiff's account. *Id.* Based on that limited assignment of rights, it was concluded that the defendant had not demonstrated the right to compel arbitration because the assignment "only transferred to PRA the right to collect [the plaintiff's] receivable" and not all rights under the original cardholder agreement in general. *Id.* at 20.

{¶ 13} In this case, Synchrony Bank's assignment of Smith's account to PRA was a complete assignment. According to the bill of sale, Synchrony assigned Smith's account "to the extent of its ownership." The limited exception found in *Lester* and *Pounds* is distinguishable because Smith is unable to demonstrate that the assignment in this case was limited to the account receivables. The assignment in this case included PRA's and its agent's rights to enforce the arbitration provision in the original cardholder agreement. *Ramirez v. Midland Funding, LLC*, N.D.Ill. No. 17-cv-2626, 2019 U.S. Dist. LEXIS 104038, 13 (June 21, 2019), citing *Jack B. Parson Cos. v. Nield*, 751 P.2d 1131, 1133 (Utah 1988), and *Gilroy v. Lowe*, 626 P.2d

469, 472 (Utah 1981) ("Under Utah law, the 'assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more.'"). Once the cardholder agreement was assigned to PRA, PRA stands in Synchrony Bank's shoes retaining all the rights under the agreement as Synchrony Bank contracted to obtain.

{¶ 14} Because PRA has the right to enforce the arbitration provision, the final question becomes whether Javitch, as agent of PRA, has the same right under the provision of the arbitration clause to demand arbitration. "The weight of authority across the nation indicates that an agent can avail itself of its principal's arbitration powers under a contract so long as the claim against the agent relates to that contract." *St. Pierre v. Advanced Call Ctr. Technologies, LLC*, D.Nev. No. 2:15-cv-02415-JAD-NJK, 2016 U.S. Dist. LEXIS 162986, 6 (Nov. 22, 2016). In *St. Pierre*, for example, the district court outlined the general rule, concluding that "[o]ther courts have generally taken this same approach, finding that it is enough that an agent is sued for conduct relating to the agreement containing the arbitration clause, even if the claim does not directly arise from that agreement." *Id.* at 8-9, citing *Lagrone v. Advanced Call Ctr. Technologies, LLC*, W.D.Wash. No. C13-2136JLR, 2014 U.S. Dist. LEXIS 141497, 3 (Oct. 2, 2014) ("Accordingly, based on the available state guidance, the court predicts that, when faced with the question, the Utah Supreme Court would permit a nonsignatory agent to enforce an arbitration provision in its principal's contract."). Under the pertinent choice-of-law provision, therefore, the general presumption is in favor of permitting nonsignatory agents of

the creditor to invoke the arbitration agreement if so permitted under the express terms of the arbitration agreement.

{¶ 15} The arbitration provision to which Smith agreed, provides that "*any dispute and claim*" between Smith and Synchrony Bank, "their affiliates, agents, and/or J.C. Penney Corporation" that relates to the account will be resolved through arbitration. (Emphasis added.) Synchrony Bank assigned its rights under the account to PRA, permitting PRA to step into Synchrony Bank's shoes under the terms of the cardholder agreement. *Morrison v. Midland Funding, LLC*, W.D.N.Y. No. 20-CV-6468-FPG, 2021 U.S. Dist. LEXIS 115432, 2021 WL 2529618, at *12 (June 21, 2021). Javitch represented PRA in the action seeking to enforce the cardholder agreement against Smith in the state court proceeding. Smith's action against Javitch is a dispute regarding Javitch's conduct in prosecuting the collections case. Under the broadly phrased arbitration agreement, Smith and Javitch's dispute relates to the account because the collections action could not arise but for Smith's account.

{¶ 16} However, the arbitration provision expressly permits either Smith or PRA, through Synchrony Bank's assignment of the account, to "make a demand for arbitration" and further, that only Smith and PRA must arbitrate their disputes. Under the express language of the arbitration provision, if "either you [(Smith)] or we [(PRA through assignment from Synchrony Bank)] make a demand for arbitration, *you and we must arbitrate any dispute or claim * * *.*" (Emphasis added.) The agreement limited the arbitration demand to Smith and PRA, and

further limited the arbitration as occurring solely between Smith and PRA. Javitch does not have the contractual right to demand arbitration.

{¶ 17} In *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir.2018), the Tenth Circuit reached a similar conclusion based on identical contractual language. In that case, J.C. Penney attempted to demand arbitration of claims arising under the credit agreement between the account holder and GE Capital Retail Bank. *Id.* The arbitration clause provided that "[i]f either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or J. C. Penney Corporation, Inc. if it relates to your account * * *." *Id.* Based on that language, it was concluded that only the account holder and GE Capital Retail Bank could demand arbitration, and J.C. Penney, although expressly identified in the arbitration clause, had no right to demand arbitration. *Id.*; *but see Lagrone,* W.D.Wash. No. C13-2136JLR, 2014 U.S. Dist. LEXIS 141497, at 1 (reaching the opposite conclusion based on the federal district court's conclusion that the Utah Supreme Court would resolve the unsettled issue of law in favor of the debt collection agency).[2]

{¶ 18} As *Cavlovic* further recognized,

Under Utah law, "only parties to the contract may enforce the rights and obligations created by the contract." *Fericks v. Lucy Ann Soffe Tr.*,

---

[2] *Lagrone* has been distinguished by other federal district courts. *Untershine v. Advanced Call Ctr. Technologies, LLC*, E.D.Wis. No. 18-CV-77, 2018 U.S. Dist. LEXIS 101399, 24 (June 18, 2018); *Taylor v. Advanced Call Ctr. Technologies, LLC*, N.D.Ill. No. 17 C 1805, 2017 U.S. Dist. LEXIS 208888, 6 (Dec. 20, 2017). Since the federal district court cases interpreting Utah law are merely persuasive authority, none are controlling.

2004 UT 85, 100 P.3d 1200, 1205-06 (Utah 2004) (quoting *Wagner v. Clifton*, 2002 UT 109, 62 P.3d 440, 442 (Utah 2002)). In rare circumstances, a third party can also enforce the contract, but "only if the parties to the contract clearly express an intention 'to confer a separate and distinct benefit' on the third party." *Bybee v. Abdulla*, 2008 UT 35, 189 P.3d 40, 49 (Utah 2008) (quoting *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980)); *see also Hermansen v. Tasulis*, 2002 UT 52, 48 P.3d 235, 239 (Utah 2002) (a third party may enforce a contract provision only if "contracting parties clearly intended" to allow the third party to exercise rights under the contract (quoting *Oxendine v. Overturf*, 1999 UT 4, 973 P.2d 417, 421 (Utah 1999)). But under no circumstances can a party "change or rewrite" the terms of an agreement to broaden the plain language — even in the face of the policy favoring arbitration. *Zions Mgmt. Servs. v. Record*, 2013 UT 36, 305 P.3d 1062, 1071 (Utah 2013) (quoting *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, 266 P.3d 751, 755 (Utah 2011)).

*Id.* at 1057-1058. The court concluded that there was no express intention to confer a separate and distinct benefit upon J.C. Penney through GE Retail Bank and the debtor's agreement under the terms of the agreement.

{¶ 19} Thus, it was concluded that J.C. Penney, as the nonsignatory of the agreement containing the arbitration clause, was not entitled to demand arbitration of the claims advanced. *Id.* That conclusion is similar to the cases in which the arbitration agreement expressly precludes the debt collection agency or attorneys from enforcing the arbitration agreement unless the bank is involved in the lawsuit. *Morrison, LLC*, W.D.N.Y. No. 20-CV-6468-FPG, 2021 U.S. Dist. LEXIS 115432, 2021 WL 2529618 at *12 (noting that not all arbitration agreements contain the express provision requiring arbitration only if the bank is a named defendant); *see, e.g., Wise v. Zwicker & Assocs., PC*, N.D.Ohio No. 5:12-CV-01653, 2013 U.S. Dist. LEXIS 41004, 15 (Mar. 22, 2013) (arbitration clause expressly exempted the debt

collection agents from the arbitration agreement unless the principal was a named defendant in the lawsuit).

{¶ 20} Under the express terms of the agreement between Smith and Synchrony Bank, and in consideration of the assignment to PRA, only Smith or PRA could demand arbitration of the claims as they relate to Smith's account, and if such demand was made, only Smith and PRA were required to arbitrate their dispute. That condition precedent, that either PRA or Smith demand arbitration, must occur before any dispute related to the account is arbitrated, even if that claim involves claims involving an agent of PRA. *See, e.g., Hayden v. Retail Equation*, C.D.Cal. No. 8:20-cv-01203-JWH-DFMx, 2021 U.S. Dist. LEXIS 137531, 11 (July 8, 2021) (approvingly citing to *Cavlovic*, 884 F.3d 1051, 1057 (10th Cir.2018), and reaching the same conclusion therein). Javitch is not contractually entitled to demand arbitration under the limited scope of agency law as contemplated under Utah law.

{¶ 21} In an attempt to circumvent the express language of the arbitration requirement, Javitch tellingly omits any reference to the first part of the arbitration clause, the condition precedent establishing that only Smith or PRA may demand arbitration. Instead, Javitch focuses on the second aspect of the clause setting forth the obligation to arbitrate any claims or disputes between Smith and PRA's agents. Regardless of the breadth of the arbitration clause, the arbitration clause permits Smith or PRA the right to demand arbitration. *Cavlovic*, 884 F.3d 1051, 1058; *but see Vanyo v. Citifinancial, Inc.*, 183 Ohio App.3d 612, 2009-Ohio-3905, 918 N.E.2d 178, ¶ 4 (8th Dist.) (declaring that the defendants, the creditors, were entitled to

demand arbitration under the contractual language that permitted the creditor, expressly defined as "us" in the arbitration clause, to make the demand).

{¶ 22} This distinction between the breadth of the arbitration clause (what is arbitrable) as contrasted against the limitations on which parties may demand arbitration is paramount. In *Hodson v. Javitch*, 531 F.Supp.2d 827, 830 (N.D.Ohio 2008), inasmuch as Javitch relies upon it, the court compelled arbitration based on an arbitration clause that expressly provided that the bank's "'successors, assigns, agents, and/or authorized representatives'" were entitled to invoke the arbitration clause. Accordingly, it was concluded that Javitch, as an authorized representative, contractually held the right to demand arbitration. *Hodson* is inapplicable to the current case based on the differing language in the respective arbitration clauses. In this case, only Smith and PRA have the right to demand arbitration according to the express language of their arbitration clause, which only requires that Smith and PRA arbitrate their disputes. Nothing in the record indicates that either PRA or Smith has demanded arbitration of the dispute nor that Smith must arbitrate her dispute with Javitch.

{¶ 23} The trial court did not err in denying Javitch's motion to stay the proceedings and compel arbitration. All other assignments of error have been rendered moot in light of the foregoing conclusion.[3] We affirm the decision of the trial court and remand for further proceedings.

---

[3] Javitch additionally claims that the trial court erred in failing to settle an App.R. 9(C) statement in which Javitch sought a journalized statement noting its compliance with the trial court's order to produce documents for an in camera inspection necessary to the

{¶ 24} Affirmed and remanded.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY

---

arbitration issue, that the trial court prematurely denied the motion to stay because the plaintiff had not filed a brief in opposition, and that the trial court erred in denying the motion to stay as a sanction for noncompliance with the order to produce documents for in camera inspection. In light of our conclusion that Javitch is not contractually entitled to demand arbitration based on the express language of the arbitration clause, the remaining assigned errors are moot. Any conclusions offered on the remainder of the assigned error would be advisory and would not change the outcome in light of our disposition.