[Cite as *Midland Funding, L.L.C. v. Schwarzmer*, 2022-Ohio-4506.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MIDLAND FUNDING LLC, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 111357 |
| MENDY SCHWARZMER, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 15, 2022

Civil Appeal from Cleveland Municipal Court
Case No. 2020-CVF-006312

*Appearances:*

Dinsmore & Shohl, LLP, and H. Toby Schisler, *for appellant,* Midland Credit Management, Inc.

Frederick & Berler LLC, Ronald I. Frederick, and Michael L. Berler; DePledge Law Office, Inc., and Laura A. DePledge, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Midland Funding, LLC ("Midland Funding"), and third-party-defendant-appellant, Midland Credit Management, Inc. ("MCM") (jointly, "Midland"), appeal the municipal court's decision denying Midland's

motion to compel arbitration based on a credit cardholder agreement originally entered between plaintiff-appellee, Mendy Schwarzmer ("Schwarzmer"), and Citibank. For the following reasons, we affirm the municipal court's judgment.

## I. Facts and Procedural History

{¶ 2} In June 2016, Schwarzmer opened a Sears credit card account through Citibank and received monthly billing statements at his residence. The following year, Schwarzmer stopped making payments, and Citibank closed the account and charged off an outstanding balance of $1,039.82. In June 2018, Citibank notified Schwarzmer that it had assigned the account to Midland Funding.

{¶ 3} Two years later, on July 20, 2020, Midland Funding initiated a collection action in the Cleveland Municipal Court. On September 18, 2020, Schwarzmer filed an answer and counterclaim, alleging that he is a resident of University Heights, Ohio, not Cleveland, Ohio, and asserting that Midland Funding violated the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("CSPA") by initiating its collection action in the Cleveland Municipal Court.

{¶ 4} On October 7, 2020, Midland filed a motion for default judgment, which Schwarzmer opposed and the municipal court later denied as moot because Schwarzmer had answered Midland's complaint. On October 23, 2020, Schwarzmer filed a notice that he had propounded discovery on Midland Funding. The following month, on November 13, 2020, Midland Funding filed an answer to Schwarzmer's counterclaim but did not assert that an arbitration agreement

governed the dispute. On January 4, 2021, Schwarzmer filed an amended counterclaim and third-party complaint against MCM. In the amended counterclaim and third-party complaint, Schwarzmer again asserted violations of the FDCPA and CSPA, but as putative class action claims against the Midland parties, alleging that Midland regularly initiates collection actions and seeks default judgments in the Cleveland Municipal Court against consumers who do not reside within the jurisdiction of the court. On February 8, 2021, Midland filed an answer to Schwarzmer's amended counterclaim, raising an arbitration agreement and its class action waiver provision among its affirmative defenses.

{¶ 5} On April 21, 2021, Midland filed a motion to compel arbitration of the amended counterclaim or, in the alternative, to strike the amended counterclaim's class allegations. Midland attached to its motion a copy of a cardholder agreement between Schwarzmer and Citibank. Included within the agreement is an arbitration provision that states:

### ARBITRATION

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.***

**THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMTED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA),**

**AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALOW.**

## Covered claims

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

## Arbitration limits

- Individual Claims filed in small claims court are not subject to arbitration, as long as the matter stays in small claims court.
- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.
- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants,

> co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

(Emphasis sic.)

**{¶ 6}** Midland also attached to its motion an affidavit of William Peck, Document Control Officer for Citibank, attesting that the card agreement that included the arbitration provision was mailed to Schwarzmer when he opened the account; the arbitration provision had not changed during the time Schwarzmer's account was active; Citibank maintains a record of all cardholders' addresses and makes a note on an account when a mailing is returned as undelivered; and Schwarzmer's account did not contain a notation indicating that any mailing was returned as undelivered. Peck further attested in his affidavit that Citibank charged off Schwarzmer's account in March 2018, and in June 2018, sold "all rights, title and interest in the [a]ccount" to Midland Funding as provided by the Bill of Sale and Assignment attached to Midland's motion. The Bill of Sale and Assignment provides that Citibank "does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer [Midland Funding], and to Buyer's successors and assigns, the Accounts summarized on the Asset Schedule attached hereto." Schwarzmer's account reflecting an outstanding balance of $1,039.82 was among the charged-off accounts listed in the asset schedule. Midland also attached to its motion an affidavit of Adam Swaninger, Manager of Operations for MCM, attesting that MCM manages the debt purchased by Midland Funding and that a review of MCM's

records reflects that Schwarzmer's account was among those that Midland Funding purchased from Citibank in June 2018.

{¶ 7} On May 19, 2021, the Cleveland Municipal Court issued a judgment entry determining that it was the improper venue to hear Midland Funding's complaint and transferred the matter to the Shaker Heights Municipal Court. On May 26, 2021, the parties filed a stipulated motion to stay briefing on Midland's motion to compel arbitration pending transfer of the case. On July 28, 2021, the Cleveland Municipal Court dismissed the case for Midland Funding's failure to pursue the collection action in the Shaker Heights Municipal Court. On August 25, 2021, Schwarzmer filed a motion for relief from judgment, which the Cleveland Municipal Court granted the following month, limiting dismissal to Midland Funding's complaint and preserving Schwarzmer's amended counterclaim.

{¶ 8} On December 29, 2021, Schwarzmer filed a brief opposing Midland's motion to compel arbitration, arguing (1) Midland was not a party to the card agreement between Schwarzmer and Citibank; (2) Midland produced no evidence that Schwarzmer assented to the arbitration provision contained within the card agreement; (3) Schwarzmer's counterclaim is not a claim covered by the card agreement's arbitration provision; (4) any disputes arising from the card agreement are governed by South Dakota law, which provides that assignees must be specifically identified in a contract to enforce contract rights such as a right to arbitration; and (5) Midland waived any purported right to arbitration by initiating the collection action against Schwarzmer.

{¶ 9} On January 10, 2022, the Cleveland Municipal Court lifted the stay on the parties' briefing on Midland's motion to compel arbitration and on February 28, 2022, denied Midland's motion. The court found that while Schwarzmer did not deny opening the credit card account and using the card to make purchases, Midland failed to produce evidence of having mailed the card agreement to Schwarzmer or a signed and dated copy of the card agreement showing that Schwarzmer had assented to its terms. The court also found that under South Dakota law, which governed the agreement between Schwarzmer and Citibank, an assignee such as Midland could not enforce the card agreement's arbitration provision unless Midland was explicitly identified in the agreement. Finally, the court found that Midland waived any right to arbitration by electing to file the collection action in municipal court rather than in arbitration.

{¶ 10} Midland now appeals this judgment, raising two assignments of error for review:

> Assignment of Error I: The trial court erred by failing to enforce the terms of the arbitration agreement.

> Assignment of Error II: The trial court erred by not enforcing the class action waiver provision in the agreement.

## II. Law and Analysis

{¶ 11} In its first assignment of error, Midland first argues that the municipal court erred by denying its April 21, 2021 motion to compel arbitration of Schwarzmer's amended counterclaim. Midland maintains that it produced unrefuted evidence that it mailed the credit card agreement to Schwarzmer when he

opened the credit card account with Citibank and that Schwarzmer agreed to the terms of the card agreement, including its arbitration provision, when he continued to use the card to make purchases. Midland also maintains that the municipal court improperly held that as Citibank's assignee, Midland could not enforce the arbitration provision in the card agreement. Lastly, Midland maintains that it did not waive its right to arbitration by initiating a collection action against Schwarzmer in the municipal court rather than pursuing the claim in arbitration because the card agreement precludes it from initiating debt collection in arbitration. We review the last of Midland's arguments first because it is dispositive.

{¶ 12} Schwarzmer argued successfully in the municipal court that Midland waived any asserted right to arbitrate when it initiated the collection action against him in municipal court rather than seeking to collect the debt in arbitration. Midland counters that the language of the arbitration provision requires that it file an action to collect a debt in small claims court. We therefore review the language of the arbitration agreement to determine whether Midland waived the right to arbitrate by filing a collection action against Schwarzmer in municipal court.

{¶ 13} Whether a dispute is arbitrable is a question for the court to determine by examination of the parties' contract. *Smith*, 2021-Ohio-3344, ¶ 9. "The intent of the parties is determined from the language used in their contract." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 40.

{¶ 14} Here, the arbitration provision states that "[i]ndividual claims filed in small claims court are not subject to arbitration" and "[w]e won't initiate arbitration to collect a debt from you[.]" Consistent with the terms of the arbitration provision, Midland filed an individual collection action against Schwarzmer in the Cleveland Municipal Court. Therefore, Midland did not waive any asserted right to arbitrate by initiating the action in municipal court.

{¶ 15} Schwarzmer next argues that Midland waived its right to arbitrate by answering his initial counterclaim and participating in discovery without requesting a stay of proceedings or moving to compel arbitration. Midland responds that the municipal court never found that Midland acted inconsistently with its right to arbitrate; that Schwarzmer changed the nature of the dispute by amending his individual counterclaim to a putative class action and adding MCM as a new party; and that Midland raised the arbitration provision in its answer to Schwarzmer's amended counterclaim and filed a motion to compel arbitration shortly thereafter.

{¶ 16} Because waiver is a fact-based issue, an appellate court reviews a trial court's decision about whether a party waived its right to arbitrate for an abuse of discretion. *Ohio Bell Tel. Co. v. Cent. Transport, Inc.*, 8th Dist. Cuyahoga No. 96472, 2011-Ohio-6161, ¶ 17. "Abuse of discretion" is

> "commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, [and] implies *not merely error of judgment*, but perversity of will, passion, prejudice, partiality, or moral delinquency. *The exercise of an honest judgment*, however erroneous it may appear to be, *is not an abuse of discretion*."

(Emphasis sic.) *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463 at ¶ 35, quoting *Black's Law Dictionary* 11 (2d Ed.1910).

{¶ 17} "The trial court is in the best position to determine whether a party has waived its right to arbitrate." *Debois, Inc. v. Guy*, 2020-Ohio-4989, 161 N.E.3d 99, ¶ 22 (8th Dist.), citing *Phillips v. Lee Homes, Inc.*, 8th Dist. Cuyahoga No. 64353, 1994 Ohio App. LEXIS 596, 10-11 (Feb. 17, 1994). "Accordingly, when applying the abuse of discretion standard, an appellate court may not substitute its own judgment for that of the trial court." *Id.*, citing *Black v. Hicks*, 8th Dist. Cuyahoga No. 108958, 2020-Ohio-3976, ¶ 96. "Thus, if the record demonstrates a reasonable basis for the trial court's decision, we must affirm." *Id.*, citing *MRK Technologies, Ltd. v. Accelerated Sys. Integration, Inc.*, 8th Dist. Cuyahoga No. 84747, 2005-Ohio-30, ¶ 11.

{¶ 18} The right to arbitration may be waived like any other contractual right. *Blue Technologies Smart Solutions, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 8th Dist. Cuyahoga No. 108535, 2020-Ohio-806, ¶ 13. "To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right." *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175, ¶ 25.

{¶ 19} A trial court may consider several factors when evaluating the totality of the circumstances, including (1) whether the party seeking arbitration invoked the court's jurisdiction by filing a complaint, (2) whether there was any delay in

requesting a stay of proceedings or an order compelling arbitration, and (3) whether the party seeking arbitration participated in the litigation, including discovery and dispositive motions. *Blue Technologies* at ¶ 19.[1]

{¶ 20} Here, Midland does not dispute that it was aware of the arbitration provision contained in the card agreement. Indeed, it relies on the language of the arbitration provision in maintaining that collection actions are excepted from arbitration and that its conduct was consistent with its right to arbitrate. Therefore, having established that Midland knew about its asserted right to arbitrate, we next determine whether Midland acted inconsistently with that right.

{¶ 21} The first factor to consider is whether Midland invoked the municipal court's jurisdiction by filing a complaint. *Blue Technologies* at ¶ 19. The municipal court concluded that Midland waived its right to arbitrate when it elected to file the collection action in the municipal court instead of in arbitration. Midland contends that the municipal court never expressly found that Midland acted inconsistently with that right.

---

[1] We omit a final factor — namely, whether the delay in requesting arbitration prejudiced the opposing party — based on a recent holding of the United States Supreme Court in *Morgan v. Sundance, Inc.*, 596 U.S. ___ (2022), that the general policy favoring arbitration does not create any new procedural rules concerning waiver. The *Morgan* Court defined waiver as "'the intentional relinquishment or abandonment of a known right'" and reasoned that when deciding "whether a waiver ha[s] occurred, [a] court focuses on the actions of the person who held the right" and "seldom considers the effects of those actions on the opposing party." *Id.*, quoting *United States v. Olano*, 507 U.S. 725, 733 (1993). The Ohio Supreme Court's analysis of waiver has been consistent with this holding. *See, e.g., Gembarski* at ¶ 24-25 (waiver occurs when a party acts inconsistently with a known right).

{¶ 22} In its judgment entry denying Midland's motion to compel arbitration, the municipal court made the following relevant findings concerning the case's procedural history:

> On July 20, 2020, Midland filed its Complaint, seeking a money judgment for default on a credit card account.
>
> On September 18, 2020, Schwarzmer filed an initial Answer and Counterclaim.
>
> On October 7, 2020, Midland moved for default judgment, which was denied.
>
> On October 23, 2020, Schwarzmer propounded discovery to Midland.
>
> On November 13, Midland replied to the [initial] counterclaim, but did not claim a right to arbitrate.
>
> On December 18, 2020, Midland answered the discovery request.
>
> On January 4, 2021, Schwarzmer filed a "First Amended Class Action Counterclaim and New Party/Third Party Complaint."
>
> On February 8, 2021, Midland replied to the amended counterclaim. In its reply, Midland raised arbitration as an affirmative defense.
>
> On April 20, 2021, Midland filed a Motion for Arbitration, based upon the "Arbitration Clause" in the credit "Card Agreement."

(Judgment Entry, Feb. 28, 2022.) The municipal court then concluded that "Midland waived its right to arbitration when it chose to file [its collection] lawsuit as opposed to electing to settle the case through arbitration." (Judgment Entry, Feb. 28, 2022.)

{¶ 23} Contrary to Midland's contention that the municipal court never determined that it acted inconsistently with its right to arbitrate, the municipal court did find that Midland filed a complaint, moved for default judgment, and answered

Schwarzmer's counterclaim and discovery requests. From this conduct, the municipal court concluded that Midland had waived its right to arbitrate.

{¶ 24} Although Midland points to an exception in the arbitration provision that states it will not initiate debt collection in arbitration, the agreement also provides that if the debtor countersues, Midland may at that point assert its right to arbitrate. Specifically, the arbitration provision states that "[w]e won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you." The municipal court found that Schwarzmer answered Midland's collection action and filed a counterclaim. Instead of asserting the right to arbitrate under the terms of the card agreement, Midland answered the counterclaim and replied to Schwarzmer's request for discovery. Even if Midland's complaint and motion for default judgment do not factor into the analysis, by answering Schwarzmer's counterclaim and participating in discovery, Midland acted inconsistently with its asserted right to arbitrate. *See Crosscut Capital, LLC v. DeWitt*, 2021-Ohio-1827, 173 N.E.3d 536, ¶ 18-19 (10th Dist.), citing *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. Franklin No. 09AP-709, 2010-Ohio-1325, ¶ 25 (finding that filing an answer and participating in discovery were inconsistent with the right to arbitrate).

{¶ 25} The second factor considers any delay in requesting a stay of proceedings or an order compelling arbitration. *Blue Technologies* at ¶ 19. The municipal court found that Midland initiated the collection action in July 2020,

answered Schwarzmer's counterclaim in September 2020, and raised the arbitration provision for the first time in its February 2021 answer to Schwarzmer's amended counterclaim.

{¶ 26} This court has found that a delay of six months in asserting a right to arbitrate "has been deemed both sufficient to show waiver, and insufficient to show waiver, depending on the degree of participation in the litigation during this time period." *Vining v. Logan Clutch Corp.*, 8th Dist. Cuyahoga No. 108563, 2020-Ohio-675, ¶ 14 (citing cases). Again, assuming Schwarzmer's initial counterclaim was the triggering event from which Midland could have asserted its right to arbitrate, Midland did not raise that right until nearly five months later and did not move to compel arbitration for more than two months thereafter. Before raising its right to arbitrate, Midland answered the counterclaim and responded to discovery requests. We cannot conclude that the municipal court abused its discretion in finding waiver when we consider these circumstances. *See Debois*, 2020-Ohio-4989, 161 N.E.3d 99, at ¶ 34 (affirming waiver when the party moving to stay proceedings initiated the litigation, sought default judgment, attended a court conference, and sought two extensions of time before asserting its right to arbitrate five months later).

{¶ 27} The third factor considers the extent of participation in the litigation, including discovery and dispositive motions. *Blue Technologies* at ¶ 19. After filing its collection action, Midland moved for default judgment, answered Schwarzmer's initial counterclaim, and responded to Schwarzmer's request for discovery, only raising the right to arbitrate after Schwarzmer amended the counterclaim to a

putative class action lawsuit. Midland cannot have it both ways—ignoring its right to arbitrate when facing an individual counterclaim but asserting that right when facing a putative class action based on the same causes of action brought by the counterclaim. Midland acted inconsistently with its right to arbitrate by answering Schwarzmer's initial counterclaim and participating in the litigation for seven months before filing its motion to compel arbitration.

{¶ 28} Midland nevertheless maintains that a party cannot be found to have waived its right to arbitrate unless its conduct is "completely inconsistent" with that right. Midland relies on *Little v. Midland Credit Mgt.*, S.D.Ohio No. 2:19-cv-5419, 2021 U.S. Dist. LEXIS 73407, at 19 (Feb. 24, 2021), to support its argument. But *Little* is distinguishable. MCM, the defendant in that case, first indicated its intention to arbitrate the matter in its answer to the plaintiff's complaint, reiterated that intention in a discovery report it filed with the trial court, and thereafter filed a motion to compel arbitration, less than two months after its answer. Here, however, Midland answered the complaint and participated in discovery without asserting its right to arbitrate.

{¶ 29} Midland also maintains that Schwarzmer changed the nature of the dispute by amending his counterclaim to a putative class action and adding MCM as a party. However, Midland cites no law supporting its contention that amending the same causes of action to a putative class action revives a waived right to arbitrate. Further, Midland's contention that MCM reserves that right even if Midland Funding waived it is not well taken. Our review of the documents that Midland

attached to its motion to compel arbitration reveal that in Bill of Sale and Assignment, Citibank assigned Schwarzmer's debt to Midland Funding, not MCM, and Adam Swaninger, MCM Manager of Operations, states in his affidavit that "Midland Credit manages the debt that Midland Funding purchases." Accordingly, MCM is not a party to Citibank's assignment of Schwarzmer's debt to Midland Funding and therefore cannot assert a right to arbitrate under the credit card agreement that governs the debt. *See Smith v. Javitch Block, L.L.C.*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344, ¶ 13 (holding that an assignee of a cardholder agreement stands in the shoes of the creditor and retains all the rights that the creditor held under the agreement). Alternatively, MCM is an arm or affiliate of Midland Funding, in which case MCM cannot independently assert a contract right that Midland Funding already waived.

{¶ 30} The dissent would find that Midland Funding acted consistently with its right to arbitrate based on language in the card agreement stating that neither party waives the right to arbitrate by participating in the litigation. In *Debois*, 2020-Ohio-4989, 161 N.E.3d 99, however, we affirmed under an abuse-of-discretion standard the trial court's finding of waiver under similar circumstances and despite contract language providing that "institution and maintenance of any action for judicial relief in a court to obtain a monetary judgment * * * shall not constitute a waiver of the right of any party to compel arbitration[.]" *Id.* at ¶ 4. We concluded that such "antiwaiver language * * * is merely one factor a court may consider in evaluating waiver of the right to arbitrate and can be waived just like any other

contractual provision." *Id.* at ¶ 46. Further, in its brief, Midland only cites the antiwaiver provision in the card agreement that permits it to initiate a collection action, not maintain the litigation following the filing of a counterclaim. App.R. 12(A)(2); App.R. 16(A)(7). Finally, while we understand the dissent's concern that a debtor may wait to amend until after the creditor has waived its right to arbitrate, we do not share this concern in the instant case. The dissent overlooks that Schwarzmer's putative class-action counterclaim arises from an alleged pattern of practice on the part of this creditor of filing collection actions in the wrong court, seeking and obtaining default judgment from unsuspecting debtors, and then in this case attempting to avoid liability by belatedly asserting its right to arbitrate under the card agreement that it may avail itself of the arbitration clause's class-action waiver. Therefore, based on our review of the record before us, we find that the municipal court had a reasonable basis to conclude that Midland waived its right to arbitrate and would not substitute our judgment for that of the municipal court.

{¶ 31} In addition to its argument that it did not waive is right to arbitrate Schwarzmer's counterclaim, Midland raises several other arguments in its first assignment of error concerning whether the arbitration agreement was received by Schwarzmer and whether it was enforceable against him. We acknowledge that Midland attached to its motion to compel arbitration affidavit evidence showing that Schwarzmer received the cardholder agreement and that Citibank, the original creditor, assigned Schwarzmer's debt to Midland. However, we need not consider

these arguments because Midland waived any right to arbitrate that it held under the card agreement when it chose to litigate Schwarzmer's counterclaim.

{¶ 32} Therefore, Midland's first assignment of error is overruled.

{¶ 33} In its second assignment of error, Midland contends that the municipal court erred, in the alternative, by not ruling on Midland's motion to strike the class allegations in Schwarzmer's amended counterclaim consistent with the class-waiver terms of the arbitration provision.

{¶ 34} "When a trial court does not grant [the] relief requested, the motion is deemed to have been denied." *Diehl v. Swartz*, 3d Dist. Union No. 14-96-39, 1997 Ohio App. LEXIS 525, at 5 (Feb. 7, 1997). "A ruling on a motion to strike is an interlocutory order and is not immediately appealable." *Marc Glassman, Inc. v. Fagan*, 8th Dist. Cuyahoga No. 87164, 2006-Ohio-5577, ¶ 11. "If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter[.]" *Assn. of Cleveland Firefighters, # 93 v. Campbell*, 8th Dist. Cuyahoga No. 84148, 2005-Ohio-1841, ¶ 6. Pursuant to R.C. 2505.02(B)(5), an appellate court may review an interlocutory order that "determines that an action may or may not be maintained as a class action." *Cooney v. Radostitz*, 8th Dist. Cuyahoga No. 110009, 2021-Ohio-2521, ¶ 13. A class action may not be maintained prior to certification of the putative class members. *Gembarski*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175, at ¶ 29.

{¶ 35} Here, Midland moved to strike allegations concerning a putative class. Because the municipal court has not yet determined whether Schwarzmer's

amended counterclaim may be maintained as a class action, we are without jurisdiction to review Midland's second assignment of error.

{¶ 36} Accordingly, Midland's second assignment of error is overruled.

{¶ 37} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
LISA B. FORBES, J., CONCURS IN JUDGMENT ONLY IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

LISA B. FORBES, J., CONCURRING IN JUDGMENT ONLY IN PART AND DISSENTING IN PART:

{¶ 38} I respectfully dissent from the majority's opinion that Midland waived its right to arbitrate under the first assignment of error. Rather, I would find that, under the second prong of the *Blue Technologies* test regarding waiver of the right to arbitrate, Midland acted consistently with its right to arbitrate pursuant to the credit card agreement applicable to the case at hand (the "Card Agreement").

{¶ 39} The Card Agreement states that "Federal law and the law of South Dakota, where [Citibank is] located, govern the terms and enforcement of this Agreement." However, it is well-settled that "while the law selected in a choice-of-law provision of a contract governs substantive rights, the issue of arbitration is a procedural remedy to be decided pursuant to the law of the forum state." *Choice Hotels, Internatl., Inc. v. C&O Developers, L.L.C.,* 8th Dist. Cuyahoga No. 111182, 2022-Ohio-3234, ¶ 15, citing *Shafer v. Metro-Goldwyn-Mayer Distrib. Corp.*, 36 Ohio App. 31, 172 N.E. 689 (10th Dist.1929). Accordingly, I would determine that Ohio law governs the analysis in this opinion.

{¶ 40} First, I would find that the Card Agreement's arbitration clause is enforceable under Ohio law. Appellate review of whether an arbitration agreement is enforceable is de novo, although "any factual findings of the trial court must be accorded appropriate deference." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2. R.C. 2711.01(A) states that an arbitration agreement in a written contract "shall be valid, irrevocable, and enforceable, expect upon grounds that exists in law or equity for the revocation of any contract."

{¶ 41} Midland presented an affidavit attesting that it mailed the Card Agreement to Schwarzmer, the mailing was not "returned undeliverable," and Schwarzmer used the credit card at issue. *See Bank One, Columbus, N.A. v. Palmer*, 63 Ohio App.3d 491, 493, 579 N.E.2d 284 (10th Dist.1989) ("Credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding

agreement."). Therefore, the arbitration agreement is enforceable as to Schwarzmer.

{¶ 42} The original parties to the Card Agreement at issue in the case at hand are Schwarzmer and Citibank. The Card Agreement states that Citibank "may assign any or all of our rights and obligations under this Agreement to a third party." As the majority noted, in June 2018, Citibank assigned Schwarzmer's account to Midland Funding. Basic contract law states that, after a valid assignment, "the assignee steps into the shoes of the assignor and assumes the rights and responsibilities under the contract." *B&G Properties Ltd. Partnership v. OfficeMax, Inc.*, 2013-Ohio-5255, 3 N.E.3d 774, ¶ 7 (8th Dist.). Therefore, the arbitration agreement is enforceable as to Midland Funding.

{¶ 43} Furthermore, pursuant to the Card Agreement, Midland Funding has the right to demand arbitration of Schwarzmer's claims against MCM, to the extent there are any. Specifically, the Card Agreement states that "Claims made * * * against anyone connected with us * * * such as a[n] * * * affiliated/parent/subsidiary company" are "subject to arbitration * * *." It is undisputed that Midland presented an affidavit of Adam Swaninger, who is "authorized to submit this declaration on behalf of [MCM] * * * and Midland Funding * * *." Swaninger further stated that he is the "Manager of Operations for [MCM]," which "manages the debt that Midland Funding purchases." *See Little v. Midland Credit Mgt.*, S.D.Ohio No. 2:19-cv-5419, 2021 U.S. Dist. LEXIS 73407 (Feb. 24, 2021) (holding that "Midland Funding was assigned the right to enforce [the arbitration] agreement, and * * * in turn," MCM

"has the right to compel arbitration against Plaintiff as Midland Funding's agent and wholly owned subsidiary").

{¶ 44} Having found that the arbitration clause in the Card Agreement is enforceable, I would turn to whether this right to arbitration was waived in the instant case.

{¶ 45} I agree with the majority's conclusion that Midland did not waive its right to arbitrate by filing its complaint against Schwarzmer to collect a debt. The Card Agreement expressly states that "Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court" and "We won't initiate arbitration to collect a debt from you * * *."

{¶ 46} However, the Card Agreement gives the parties the discretionary right to arbitrate at other stages of the litigation. For example, Schwarzmer "can choose to arbitrate * * * Claims brought against" him. Additionally, Midland "can choose to arbitrate" if Schwarzmer "assert[s] a Claim against" it. The Card Agreement further states as follows: "Arbitration may be requested any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither [Schwarzmer] nor [Midland] waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion, or discovery in a court lawsuit."

{¶ 47} Schwarzmer filed a counterclaim on his own behalf on September 18, 2020, alleging violations of the FDCPA and the CSPA. Midland Funding filed an

answer and, pursuant to the agreement, chose not to arbitrate these individual claims.

{¶ 48} On January 4, 2021, Schwarzmer filed a first amended class action counterclaim against Midland Funding and a "new party/third-party complaint" against MCM, seeking a declaratory judgment and "certification of three classes of plaintiffs" and alleging violations of the FDCPA and the CSPA. When this amended counterclaim and third-party complaint changed the legal theory upon which Schwarzmer based his allegations, Midland chose to arbitrate these class action claims, pursuant to its right under the agreement.

{¶ 49} Midland acted consistently with its right to arbitrate by filing an answer on February 8, 2021, stating as its first affirmative defense that "Schwarzmer's Counterclaim is governed by a valid arbitration agreement and/or class action waiver provision. If Schwarzmer refuses to consent to arbitration, Midland will move to compel arbitration." Midland again acted consistently with its right to arbitrate by filing a motion to compel arbitration on April 21, 2021. As stated in the Card Agreement, Midland did not "waive the right to arbitrate by filing * * * [an] answer."

{¶ 50} Where the majority sees Schwarzmer's initial counterclaim as the sole "triggering event from which Midland could have asserted its right to arbitrate," I see Schwarzmer's amended class action counterclaim and third-party complaint as another triggering event from which Midland had the right to, and did assert, arbitration. Indeed, the parties specifically contracted for this right within the Card

Agreement. *See Morgan v. Sundance, Inc.,* ____U.S.____, 142 S.Ct. 1708, 1713, 212 L.Ed. 753 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind.").

{¶ 51} The majority opinion creates the unfortunate situation in which debtors may wait until creditors decide not exercise their right to arbitrate a certain claim, then assert a new claim, thus changing the landscape of the litigation, only then to argue that it is too late for the creditor to assert arbitration.

{¶ 52} I would sustain Midland's first assignment of error, finding that, under the terms of the Card Agreement and based on Midland's conduct following the filing of Schwarzmer's amended counterclaim, Midland did not waive its right to arbitrate, and the municipal court abused its discretion when it denied Midland's motion to compel arbitration.

{¶ 53} In concur in judgment only with the majority's disposition of Midland's second assignment of error. As relates to Midland's motion to strike, I would find that, because there is no ruling from the municipal court on the motion and the case remains pending, there is nothing for this court to review.