[Cite as *UH Rainbow Babies & Children's Hospital v. Caresource*, 2018-Ohio-2839.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106151**

**UH RAINBOW BABIES &
CHILDREN'S HOSPITAL**

PLAINTIFF-APPELLEE

vs.

**CARESOURCE**

[Appeal By United Healthcare Insurance Company]

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-867735

**BEFORE:** Keough, J., E.A. Gallagher, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** July 19, 2018

**ATTORNEYS FOR APPELLANT**

Brent S. Silverman
Robert A. West
Ciano & Goldwasser, L.L.P.
1610 Midland Building
101 Prospect Avenue, West, Suite 1610
Cleveland, Ohio 44115

Donald T. Campbell
Aalook K. Sharma
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota   55402


**ATTORNEYS FOR APPELLEE**

**FOR UNIVERSITY HOSPITALS RAINBOW BABIES & CHILDREN'S HOSPITAL**

John F. Garswood
Daniel W. Dreyfuss
1801 East Ninth Street, Suite 1110
Cleveland, Ohio 44114

**FOR CARESOURCE**

Katrina M. English
CareSource
230 North Main Street
Dayton, Ohio 45402

Matthew C. O'Connell
Sutter O'Connell Co.
3600 Erieview Tower
1301 East Ninth Street
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, J.:

{¶1} Third-party defendant-appellant, UnitedHealthcare Insurance Company ("United") appeals from the trial court's decision denying its motion to stay the proceedings, compel arbitration, and dismiss with prejudice. For the reasons that follow, we affirm.

{¶2} In February 2014, mother-insured gave birth to multiple children at Rainbow Babies & Children's Hospital, a medical facility operated by University Hospitals ("UH"). At the time of the births, mother had employer-sponsored health insurance provided by United. It is undisputed that United provided medical coverage from the children's birth until at least February 28, 2014. On March 1, 2014, mother enrolled in Caresource, a Medicaid-managed care plan, that continued to provide medical coverage to the children until they were discharged from UH in April 2014.

{¶3} UH billed both United and Caresource for services rendered to the children. Caresource initially paid the claim for one of the children, but denied the other claim. However, about a month later, Caresource reversed the payment and denied both claims until it could verify coverage through mother's coordination of benefits.

{¶4} In August 2016, UH filed a breach of contract action against Caresource for failure to pay the medical bills of its insured. UH did not bring an action against United. Caresource filed its answer, denying liability and asserting that United is the sole responsible party for the payment of the medical bills.

{¶5} In March 2017, without objection, the trial court granted Caresource leave to file a third-party complaint and a counterclaim against UH. Count 1 of the third-party complaint sought indemnification and contribution against United. Count 2 requested declaratory relief

against United and UH, requesting that the trial court declare that United is the primary insurer and responsible party to UH, and that Caresource is the secondary insurer and not responsible for the medical bills.[1]

{¶6} In response, United admitted that a justiciable controversy existed but asserted that Caresource is liable for the payments to UH. Accordingly, United raised as an affirmative defense that the trial court lacked jurisdiction over the declaratory judgment action, claiming that the matter was subject to arbitration because United's Facility Participation Agreement ("FPA") with UH contains an arbitration provision that requires the parties to arbitrate "any and all disputes" covered under the FPA. Subsequently, pursuant to R.C. 2701.01, United moved to stay the proceedings, compel arbitration, and dismiss the case with prejudice. United maintained that because Caresource was seeking the benefit of United paying UH's claims, it was subject to the arbitration agreement between United and UH.

{¶7} Caresource opposed the motion to compel, contending that the action is not subject to arbitration because (1) Caresource is not a party or signatory to the FPA containing the arbitration provision; (2) there is no dispute between United and UH; rather the dispute is between United and Caresource, and (3) the controlling contract is mother-insured's certificate of coverage ("COC") issued by United. In support, Caresource attached to its brief in opposition mother's health insurance policy, which is titled, "UnitedHealthcare Insurance Company; UnitedHealthcare Choice Plus; Certificate of Coverage, Riders, Amendments, and Notices for [mother's employer]." The lengthy document identifies the eligible individuals under the policy,

---

[1]Whether Caresource's use of Civ.R. 14 to bring a declaratory judgment action against United was proper was not an issue that was raised with the trial court or with this court. We further note that United did not object and specifically admitted that a justiciable controversy existed between it and Caresource.

when coverage begins, and when that coverage ends. Caresource maintained that these provisions determine whether the children were covered by United or Caresource during the disputed time period. Caresource noted that the document does not contain an arbitration clause.

{¶8} Following a hearing, the trial court denied United's motion to compel, finding:

> The court is not persuaded that equity demands defendant Caresource be compelled to arbitrate as a nonsignatory to the agreement. In the case law cited by third party defendant United, it is clear that the nonsignatory parties in those cases benefitted from the contract that contained the arbitration clause. In the case before the court, Caresource has not benefitted in any respect from the contract between United and UH Rainbow Babies and Children's Hospital.

{¶9} United now appeals, raising as its sole assignment of error the trial court abused its discretion in denying its motion to compel arbitration. United maintains that even though Caresource is not a signatory to the FPA between United and UH, Caresource is seeking to benefit from the FPA and thus, it should be estopped from denying a corresponding obligation to arbitrate.

{¶10} United maintains that Caresource's entire theory in its third-party complaint depends entirely upon the terms of the FPA, which governs United and UH's arrangement for UH to be an in-network provider to United's customers. According to United, the FPA dictates, among other things, how claims are paid. United asserts that the only way it can be held liable for payment of UH's claims in this matter rests exclusively through the FPA. And because the FPA contains a mandatory arbitration provision requiring any and all disputes between United and UH to be resolved by arbitration, Caresource must be compelled to arbitrate, even though it is not a signatory to the FPA.

{¶11} Caresource, on the other hand, contends that the FPA is irrelevant to the declaratory judgment action on the issue of who provides primary coverage for the newborn

children (which according to Caresource must be determined before the issue of indemnification and contribution is resolved). Caresource maintains that United's COC issued to the insureds will determine whether it provides coverage for the medical services received by newborn children. Additionally, it contends that both the COC and R.C. 3923.26 (coverage for newly born children) will resolve the issue of the duration of time that United must pay for covered health services in this case. Accordingly, because the FPA does not dictate whether United's coverage is primary, Caresource contends that the FPA is not relevant, and the issue of whether United provides primary coverage would still exist even if United had not entered into a FPA with UH.

{¶12} We conclude that the COC and R.C. 3923.26 determine if United's coverage is primary, meaning United must pay claims before they are submitted to Caresource. And because the COC does not contain an arbitration provision, the trial court did not err in denying United's motion to compel arbitration.

{¶13} Succinctly, it is undisputed that United provided medical coverage from the children's birth until at least February 28, 2014. The dispute between Caresource and United is which insurer must provide primary coverage for the 31 days of care that the infants received during March 2014. Caresource claims that United provides primary coverage for 31 days from their births pursuant to the COC and R.C. 3923.26. United maintains that Caresource provided primary coverage as of March 1, 2014. Thus, the issue to be resolved by the trier of fact is whether United provides coverage for 31 days, as Caresource argues, or only for the 8 days as United maintains. The sole issue on appeal, however, is whether Caresource should be compelled to arbitrate its claim against United.

**{¶14}** Denials of motions to dismiss or stay proceedings pending arbitration are generally reviewed for an abuse of discretion. *See generally McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543. However, deciding whether the claims arise from the agreement containing the arbitration clause involves an interpretation of the contract, which is a question of law subject to de novo review. *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012 (8th Dist.). However, whether the parties can be compelled to arbitrate requires a trial court to make factual findings, which "must be accorded appropriate deference." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2. Accordingly, a reviewing court accepts the trial court's findings of fact that are not "clearly erroneous," but decides questions of law de novo. *Ghanem v. Am. Greetings Corp.*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶ 11.

**{¶15}** The Ohio Supreme Court has held: "'"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.'" *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998), quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20. Accordingly, when deciding motions to compel arbitration, the proper focus is whether the

parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes. *Waffle House*, 534 U.S. at 294.

{¶16} Ohio courts recognize a presumption in favor of arbitration when a claim falls within the scope of an arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). But significantly, there is a counter-weighing presumption against arbitration when a party seeks to invoke an arbitration provision against a nonsignatory. *Council of Smaller Ents.*, at 667, citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In the latter instance, "there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything * * *." *Id*.

{¶17} Generally, parties who have not agreed to arbitrate their disputes cannot be forced to forego judicial remedies. *Physician's Weight Loss*, at ¶ 14, citing *Moore v. Houses on the Move, Inc.*, 177 Ohio App.3d 585, 2008-Ohio-3552, 895 N.E.2d 579 (8th Dist.). There are instances, however, "where equity demands that parties who have not agreed to arbitrate their disputes may be forced to do so when 'ordinary principles of contract and agency' require." *Physician's Weight Loss* at *id*., quoting *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir.1980). One such instance where a nonsignatory will be bound to an arbitration agreement is under an estoppel theory. *See Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773 (2d Cir.1995).

{¶18} Estoppel applies where "a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3631, 813 N.E.2d 4, ¶ 13 (8th Dist.), citing *Thomson-CSF* at 778 (estoppel analysis depends on whether the nonsignatory derived a direct benefit from the contract containing the arbitration clause such that acceptance of the benefit

would also require acceptance of a contractual obligation). "This doctrine 'precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.'" *Physician's Weight Loss*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, at ¶ 15, quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Dist.2003).

**{¶19}** In this case, United contends that because the FPA contains mandatory arbitration of any and all disputes between United and UH, Caresource must be compelled to arbitrate, even though it is not a signatory to the FPA, because Caresource seeks the benefit of the FPA, specifically that United pay UH's claims. In support, United relies on *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381.

**{¶20}** In *Gerig*, the Ohio Supreme Court addressed whether an issue of insurance coverage was subject to arbitration in accordance with an agreement between the physician and the hospital. While under the care of the physician, mother gave birth to twins at a local hospital. At the time of the deliveries, the physician was working at the hospital under an affiliation agreement, which contained an arbitration provision, that required the hospital to insure him against medical-malpractice claims. The Gerigs filed suit against the physician and alleged that he caused birth defects to one of the twins by malpractice during the delivery. At the time the suit was filed, the hospital provided malpractice insurance to the physician through an insurance company with liability limits up to $4 million. In addition, the hospital funded a self-insurance plan to pay malpractice claims.

**{¶21}** Thereafter, the insurance company became insolvent and was forced into liquidation. The Ohio Insurance Guaranty Association ("OIGA") became involved in the case to pay any covered claims brought by consumers against the insolvent insurance company.

**{¶22}** Because the statutory limit for OIGA claims was $300,000 and because OIGA pays claims only after a claimant has exhausted her rights under all other insurance policies, the Gerigs, the physician, and OIGA sought judicial clarification on the issue of insurance coverage, in light of the insurance company's insolvency. The Gerigs and the physician sought a declaration that by virtue of the affiliation agreement, the hospital was responsible for any judgment up to $4 million. The OIGA sought a declaration that under the affiliation agreement, the hospital was required to pay any judgment to the Gerigs under its self-insurance fund thus, OIGA was not obligated to pay any damages unless the Gerigs exhausted that fund. Therefore, the hospital sought an order compelling arbitration of the dispute regarding whether the hospital was legally required, pursuant to the agreement, to insure the physician through its self-insurance plan. The physician, who was the only other signatory to the affiliation agreement, did not oppose the hospital's motion.

**{¶23}** In deciding the issue, the court noted that the Gerigs and OIGA sought a declaration of the hospital's rights and obligations to the physician under the affiliation agreement, even though they did not have a direct dispute with the hospital. *Id*. at ¶ 12. The court held that "it would be inequitable to allow an interested nonsignatory to determine the forum in which an agreement is to be interpreted when the signatories previously agreed in writing to arbitrate any controversy relating to the agreement." *Id*. at ¶ 19. Accordingly, based on the principle of equitable estoppel, the court found the arbitration agreement to be enforceable against the interested nonsignatories. *Id*.

**{¶24}** The court's holding in *Gerig* only applies when a nonsignatory is seeking a declaration of the signatories' rights and obligations *under the contract*. The test is whether a nonsignatory has asserted claims that arise from the contract containing the arbitration clause.

*Taylor*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203 at ¶ 33, citing *Gerig,* 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381 at ¶ 19.  In the *Gerig* case, the nonsignatories' entire claim against the signatory seeking to compel arbitration hinged on the interpretation of the agreement containing the arbitration provision.  Therefore, the court held that the nonsignatories each sought to benefit from the agreement — that the hospital would be required to pay the claims first.  Accordingly, it was determined that the nonsignatories were subject to the arbitration clause.

{¶25} In this case, however, the claims raised by Caresource do not arise from the contract containing the arbitration clause and thus, *Gerig* is factually distinguishable. Caresource's entire claim against United rests entirely on coverage of the insureds — not how or if United will pay UH once it is determined that United is the responsible party to cover the expenses incurred from the services rendered by UH.  Therefore, the nonsignatory's claim does not hinge on the interpretation of the FPA that contains the arbitration provision.

{¶26} Moreover, Caresource contends that the coverage of the FPA is unknown because United has only offered a redacted version of the FPA — only the portion containing the arbitration agreement was provided.  The party seeking to compel arbitration with a nonsignatory bears the burden of establishing that the nonsignatory seeks to receive a benefit under the contract and that the contract governs the nonsignatories' claims.  *See, e.g., Fifth Third Bank v. Senvisky*, 8th Dist. Cuyahoga Nos. 100030 and 100571, 2014-Ohio-1233, ¶ 11 (party seeking to compel arbitration bears the burden of establishing the existence of an enforceable arbitration agreement between it and the compelled party).  Because only a redacted copy of the FPA was provided, this court agrees with Caresource that it is uncertain exactly what the FPA covers.  The FPA appears to be the agreement memorializing that UH would be an in-network

provider to United's customers. It seems unreasonable to conclude that whether a specific individual is covered as an insured with United would be found in the FPA.

{¶27} United maintains that the issue is not a "coverage dispute" but merely a payment dispute. In its appellate brief, United contends that if it "has any obligation to pay UH for in-network services, it exists only through the [FPA] it has with UH to provide those services." And that "[i]nstead the present dispute is a payment dispute seeking reimbursement that would be controlled by certain rates and methods dictated by the FPA." We disagree.

{¶28} Our review of Caresource's claims, the provided unredacted portion of the FPA, and the COC demonstrates that this matter is a coverage dispute that must be determined using the COC. Caresource is purely seeking a judicial declaration that United is the primary insurance company required to pay UH's claims. Whether or how United actually pays the claims in accordance with the FPA is not an issue with Caresource and is not an issue in the declaratory judgment action.

{¶29} Who covers these children during this 31-day time period? This issue does not involve whether the UH is an in-network provider to United's customers. This is not in dispute. Furthermore, this issue does not involve whether the children were insured. It is undisputed that they were insured. The question is who covers these children during a specific and relatively small timeframe. That is a legal question based on contract interpretation, i.e. through the COC and relevant Ohio law. Because the COC does not contain an arbitration provision, Caresource cannot be compelled to arbitrate its claims against United.

{¶30} Accordingly, the trial court did not abuse its discretion in denying United's motion to stay the proceedings and compel arbitration. The assignment of error is overruled.

{¶31} Judgment affirmed.

It is order that appellee recover of appellant its costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR