[Cite as *Smith v. Javitch Block, L.L.C.*, 2023-Ohio-607.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KHADIJA SMITH,                          :

    Plaintiff-Appellee,          :

                                No. 111532

    v.                          :

JAVITCH BLOCK LLC, ET AL.,              :

    Defendants-Appellants.       :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 2, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-935178

*Appearances:*

The Misra Law Firm, LLC, and Anand N. Misra; Robert S. Belovich Attorney LLC, and Robert S. Belovich, *for appellee.*

Gallagher Sharp LLP, Lorie E. Brown, Maia E. Jerin, and Richard C.O. Rezie; Javitch Block LLC, and Michael D. Slodov, *for appellants.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendants-appellants, Javitch Block, LLC, Anthony Barone II, and Erica Kravchenko (collectively "Javitch"), appeal from the trial court's judgment

denying its renewed motions to stay, compel binding arbitration, and strike class allegations. Javitch raises the following assignments of error for review:

> 1. The trial court erred in denying Javitch's renewed motion to stay, compel binding arbitration, and to strike class allegations.
>
> 2. The trial court erred in denying Javitch's motion to strike class allegations.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} On October 30, 2013, plaintiff-appellee, Khadija Smith ("Smith") opened a J.C. Penney branded credit-card account through Synchrony Bank. At the time, Smith received monthly billing statements to and remitted payments from an address in Parma Heights, Ohio — 6410 Stumph Road, Apt. 203, Cleveland, Ohio 44130 ("Stumph Road"). Ultimately, Smith failed to make payments on the account, which was closed, and the outstanding balance of $559.86 was charged off.

{¶ 4} Pursuant to the terms and conditions of the credit-card agreement governing Smith's account (the "Agreement"), Smith was advised that Synchrony Bank "may sell, assign or transfer any or all our rights or duties under this Agreement of your account" without notice. Immediately after the assignment clause, the Agreement included a section titled "Resolving a Dispute with Arbitration." That provision provides as follows:

> Please read this section carefully. If you do not reject it, this section will apply to your account, and most disputes between you and us will be subject to individual arbitration. This means that: (1) neither a court nor a jury will resolve any such dispute; (2) you will not be able to

participate in a class action or similar proceedings; (3) less information will be available; and (4) appeal rights will be limited.

{¶ 5} The Agreement further sets forth the scope of the arbitration clause, stating, in pertinent part:

What claims are subject to arbitration

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or J.C. Penney Corporation, Inc. if it relates to your account * * *.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

{¶ 6} Finally, the Agreement contains a class-action provision, which provides:

You agree not to participate in a class, representative or private attorney general action against us in court or arbitration. Also, you may not bring claims against us on behalf of any accountholder on your account, and you agree that only accountholders on your account may be joined in a single arbitration with any claim you have.

{¶ 7} There is no dispute that terms "you and us" contained in the Agreement refer respectively to Smith and Synchrony Bank. It is further undisputed that the Agreement's choice-of-law provision provides that Utah law controls; and the arbitration agreement arises solely under the Federal Arbitration Act ("FAA").

{¶ 8} On August 19, 2017, Synchrony Bank sold and assigned all rights, title, and interest in Smith's account to Portfolio Recovery Associates, L.L.C. ("PRA").

The extent of the assignment of rights was set forth in a separate document that was produced under seal.

{¶ 9} On August 8, 2018, PRA initiated a collection action against Smith in Cleveland M.C. No. 2018-CVF-011911 to collect the unpaid balance and interest owed on the account. Relevant to this appeal, Javitch, a law firm concentrating in the area of consumer debt, represented PRA throughout the collection proceedings. On March 15, 2019, PRA filed a motion for default judgment, arguing that Smith was served with process at her last known address on October 31, 2018, but failed to plead or otherwise defend as provided by the Rules of Civil Procedure. On April 2, 2019, a default judgment was entered in favor of PRA in the amount of $559.86 plus interest and costs. Ultimately, the judgment against Smith was recovered by PRA through garnishment proceedings.

{¶ 10} On July 22, 2020, Smith filed a motion to vacate the default judgment, claiming the Cleveland Municipal Court lacked jurisdiction over the collection action because the residence address listed in PRA's complaint was not within the territory of the Cleveland Municipal Court. The relief was granted, and PRA returned the garnished funds. On September 15, 2020, the collection action was dismissed without prejudice.

{¶ 11} On July 23, 2020, Smith filed a class-action complaint against Javitch in Cuyahoga C.P. No. CV-20-935178, setting forth claims for unjust enrichment, negligence, invasion of privacy, and violations of Ohio's Consumer Sales Practices Act. The complaint stemmed from Javitch's representation of PRA during the

collection action and alleged that Javitch knowingly subjected prospective class members to unlawful collection and garnishment related practices by obtaining judgments "in courts that lacked territorial jurisdiction."

{¶ 12} On September 25, 2020, Javitch asserted its right to arbitrate the dispute as an agent of PRA, which was assigned an interest in Smith's account. In its motion to stay, motion to compel binding arbitration, and motion to strike class allegations, Javitch argued, in relevant part:

> Smith's purported class action complaint is a response and relates to the way her debt owed to defendant's non-party client, [PRA], was collected in the Cleveland Municipal Court. In short, [Smith] alleges the suit was filed in the wrong court. Smith does not deny having a J.C. Penney branded Synchrony Bank card, owing the debt or that she failed to pay the amount due.
>
> Smith's claims must all be resolved in arbitration on an individual basis pursuant to the mandatory, binding and unambiguous arbitration agreement governing her account, as Smith waived her right to bring a class action.
>
> Therefore, the court must stay these proceedings, Smith's class action allegations must be stricken, and if she wishes to proceed with her claims against Defendants, she must be compelled to raise her individual claims in binding arbitration.

{¶ 13} On December 14, 2020, the trial court summarily denied Javitch's motion, stating, "Defendants' motion to stay, motion to compel binding arbitration and motion to strike class allegations, filed 09/25/2020, are denied."

{¶ 14} In *Smith v. Javitch Block, LLC*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344 ("*Smith I*"), this court affirmed the trial court's judgment, finding "the trial court did not err in denying Javitch's motion to stay the proceedings and compel arbitration." *Id*. at ¶ 23. In pertinent part, this court determined that (1)

"Synchrony Bank's assignment of Smith's account to PRA was a complete assignment," (2) "PRA has the right to enforce the arbitration provision," (3) Javitch acted as PRA's agent by seeking to enforce the Agreement against Smith in the collections action, and (4) Smith's class-action claims against Javitch "relates to the account because the collections action could not arise but for Smith's account." *Id.* at ¶ 13-15. Significantly, however, this court determined that Javitch does not possess the same contractual rights under the Agreement that are afforded to its principal, PRA. For instance, we found that Javitch "did not have the contractual right to demand arbitration" because the Agreement "limited the arbitration demand to Smith and PRA, and further limited the arbitration as occurring solely between Smith and PRA." *Id.* at ¶ 16. This court summarized its conclusion as follows:

> Under the express terms of the agreement between Smith and Synchrony Bank, and in consideration of the assignment to PRA, only Smith or PRA could demand arbitration of the claims as they relate to Smith's account, and if such demand was made, only Smith and PRA were required to arbitrate their dispute. That condition precedent, that either PRA or Smith demand arbitration, must occur before any dispute related to the account is arbitrated, even if that claim involves claims involving an agent of PRA. * * * Javitch is not contractually entitled to demand arbitration under the limited scope of agency law as contemplated under Utah law.
>
> Nothing in the record indicates that either PRA or Smith has demanded arbitration of the dispute nor that Smith must arbitrate her dispute with Javitch.

*Id.* at ¶ 20-22. Accordingly, this court affirmed the decision of the trial court and remanded the matter for further proceedings.

{¶ 15} On remand, PRA sent a letter to Smith, dated April 4, 2022, demanding that she submit her class-action lawsuit "to arbitration on an individual basis before the American Arbitration Association ('the AAA'), or if [she] would prefer, before JAMS." The demand letter further specified as follows:

> In the event Ms. Smith does not commence an arbitration within 14 days, we will ask that the law firm representing [Javitch] * * * petition the court to compel Ms. Smith to arbitrate her litigation claims against [Javitch], in individual arbitration before the AAA.

{¶ 16} Smith did not respond to PRA's demand letter, nor did she submit her claims to arbitration within 14 days of PRA's demand. Therefore, on April 19, 2022, Javitch filed a renewed motion to stay, motion to compel binding arbitration, and motion to strike class allegations. The motion sought an order directing Smith and PRA to proceed with arbitration on an individual basis in accordance with the terms of the Agreement, PRA's demand letter, and the mandates of this court's decision in *Smith I*. According to Javitch, "[f]airness should not permit Smith to avoid arbitration of her dispute related to the way the debt she owes to PRA was collected, because her agreement indisputably requires her to arbitrate such claims if and when a demand is made by PRA." Javitch further asserted that (1) a stay was necessary "to conserve judicial resources and avoid duplicative litigation," and (2) Smith "waived her right to assert claims either as a class representative or a class member, whether in court or at arbitration."

{¶ 17} On April 29, 2022, Smith filed a motion to strike Javitch's renewed motion, arguing that the motion was meritless because (1) neither Smith nor PRA

have asserted a dispute against the other, (2) Javitch lacks standing to seek arbitration of a nonexistent dispute between Smith and PRA, and (3) the law of the case prevents Javitch from seeking arbitration of Smith's claims against them. Relying on this court's prior decision, Smith argued that there are two prerequisites to arbitration:

> First, that a demand must be made by someone authorized to do so. And, second, that the dispute must only be between signatories to the agreement or their assignee.

{¶ 18} On May 18, 2022, the trial court summarily denied Javitch's renewed motion without a hearing.

{¶ 19} Javitch now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Motion to Stay and Compel Arbitration

{¶ 20} In the first assignment of error, Javitch argues the trial court erred in denying its renewed motion to stay, to compel arbitration, and to strike class allegations. Javitch contends that because "a valid arbitration agreement exists and encompasses this dispute, and because the condition precedent to arbitration has now been satisfied (PRA's demand for arbitration), the trial court erred in failing to order Smith to arbitrate this dispute."

### 1. Standard of Review

{¶ 21} Both the FAA and Ohio's Arbitration Act "provide that a court shall stay proceedings and compel arbitration when 'an issue is referable to arbitration under an agreement in writing for arbitration.'" *Sinley v. Safety Controls*

*Technology, Inc.*, 8th Dist. Cuyahoga No. 109065, 2020-Ohio-4068, ¶ 15, quoting R.C. 2711.02 and 2711.03; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.2001), citing 9 U.S.C. 3 and 4. Arbitration, as a matter of contract, is not required if the party against whom the enforcement is sought did not contractually agree to submit to arbitration. *Id.*, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998). Thus, the preliminary question when determining whether to stay an action and compel arbitration is "whether the parties actually agreed to arbitrate the issue and not the general policy goals of the arbitration statutes." *Id.*, citing *UH Rainbow Babies & Children's Hosp. v. Caresource,* 8th Dist. Cuyahoga No. 106151, 2018-Ohio-2839, ¶ 5.

{¶ 22} The standard of review for a decision granting or denying a motion to stay proceedings pending arbitration is generally abuse of discretion. *EMCC Invest. Ventures, L.L.C. v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶ 18-19, citing *River Oaks Homes, Inc. v. Krann*, 11th Dist. Lake No. 2008-L-166, 2009-Ohio-5208, ¶ 41. "A trial court's grant or denial of a stay based solely upon questions of law, however, is reviewed under a de novo standard." *Id.*, citing *Buyer v. Long*, 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, ¶ 6; *Pantages v. Becker*, 8th Dist. Cuyahoga No. 106407, 2018-Ohio-3170, ¶ 7. "Although there is a presumption in Ohio favoring arbitration, parties cannot be compelled to arbitrate a dispute they have not agreed to submit to arbitration." *Pantages* at ¶ 7, citing *Natale v. Frantz Ward, L.L.P.*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9 (8th Dist.).

{¶ 23} The question of whether a controversy is referable to arbitration under the provisions of a contract is a question for a court to decide upon examination of the contract. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 171, 517 N.E.2d 559 (8th Dist.1986). "When confronted with an issue of contract interpretation, the role of the court is to give effect to the intent of the parties to that agreement. The court examines the contract as a whole and presumes that the intent of the parties is reflected in the language used in the agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Further, "[i]n interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).

{¶ 24} Finally, we note that "'[n]o authority — not the [Federal Arbitration Act or 'FAA'], the Federal Rules of Civil Procedure, or any other source of law * * * limits a party to only one motion under §§3 or 4 of the FAA.'"[1] *Khath v. Midland Funding, LLC*, 334 F.Supp.3d 499, 510 (D. Mass.2018), quoting *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir.2015) (holding the district court erred by deciding a renewed motion to compel as a motion for reconsideration).

---

[1] Section 4 provides that a party seeking to enforce an arbitration agreement "may petition" the court for an order compelling arbitration. 9 U.S.C. 4. And 9 U.S.C. 3 states that courts "shall on application of one of the parties stay the trial of the action" if certain conditions are met. 9 U.S.C. 3.

## 2. Rights and Responsibilities Under the Agreement

{¶ 25} For the purposes of this appeal, we begin by observing that the interpretation of the Agreement and the scope and breadth of the arbitration clause contained therein was substantially resolved by this court in *Smith I*. As previously discussed, it is well settled that (1) PRA stands in Synchrony Bank's shoes as the assignee of the Agreement, (2) Smith agreed to arbitrate "any dispute or claim" between her and PRA and/or its agents, and (3) Smith's dispute against Javitch in this case related to her credit-card account "because the collections action could not arise but for Smith's account." *Smith I*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344, at ¶ 13-15.

{¶ 26} This court further examined whether Javitch, as agent of PRA, has the same right under the provision of the arbitration clause to demand arbitration. In assessing Javitch's express rights under the agreement as a nonsignatory agent, this court acknowledged that "'[t]he weight of authority across the nation indicates that an agent can avail itself of its principal's arbitration powers under a contract so long as the claim against the agent relates to that contract.'" *Id*. at ¶ 14, quoting *St. Pierre v. Advanced Call Ctr. Technologies, L.L.C.*, D.Nev. No. 2:15-cv-02415-JAD-NJK, 2016 U.S. Dist. LEXIS 162986, 6 (Nov. 22, 2016). Ultimately, however, this court rejected Javitch's reliance on agency principles and concluded that the express terms of the Agreement "limited the arbitration demand to Smith and PRA, and further limited the arbitration as occurring solely between Smith and PRA." *Id*. at ¶ 16. Accordingly, this court concluded that (1) as a condition precedent of

arbitration, either Smith or PRA must make a demand for arbitration, and (2) only Smith and PRA could arbitrate any dispute or claim.

{¶ 27} On appeal, Javitch acknowledges that pursuant to the terms of the Agreement and the findings of this court in *Smith I*, "[it] is not contractually entitled to demand arbitration," and "that only PRA and Smith can demand arbitration." In addition, Javitch does not dispute that it may not participate in the arbitration proceedings, as the terms of the agreement limit arbitration between Smith and PRA. Nevertheless, Javitch suggests that because Smith's dispute is intrinsically related to the subject account and involves claims against PRA's agent, Smith is obligated to arbitrate her claims and may not avoid her contractual obligations by artfully "suing the nonsignatory agent instead of the signatory principal." According to Javitch:

> Giving effect to the word "agents" in the arbitration agreement compels the conclusion that PRA has the right to demand arbitration — even if it is not a named party to the litigation — when the claims made are against its agents and when the claims relate to the account, as is the case here.
>
> * * *
>
> Any decision that Javitch cannot petition the court or that Javitch and PRA cannot enforce the Agreement would deny the effect of the clear language of the contract and make the arbitration provision meaningless.

Thus, Javitch maintains that once PRA made a timely demand for arbitration and authorized Javitch to petition the court on its behalf if Smith failed to comply with the demand, Javitch is entitled to an order staying the litigation and compelling arbitration under Ohio law, Utah law, and the FAA.

{¶ 28} In opposition, Smith argues that this court's decision in *Smith I*, "states two prerequisites: First, that PRA (or Ms. Smith) must make a demand for arbitration, and second, that the arbitration must be a dispute between PRA and Ms. Smith ('their dispute')." Thus, Smith contends that because there "are no new facts relating to the nature of the dispute in this case — the dispute is between Ms. Smith and Javitch — both before the earlier appeal and now, * * * there is not foundation for Javitch's attempt to have this court reverse the law of this case." Smith further contends that "under Utah law, an agent cannot enforce for its own benefit its principal's arbitration agreement."

{¶ 29} Preliminarily, we find no merit to Smith's assertion that the trial court was required to deny Javitch's motion pursuant to the law-of-the-case doctrine because the alleged second prerequisite of *Smith I* has not been satisfied. The law-of-the-case doctrine has long existed in Ohio jurisprudence. "'[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id*.

{¶ 30} In this case, Smith correctly states that this court has already determined that, as a prerequisite to arbitration, either Smith or PRA must make a

demand for arbitration. However, this court did not find, as a second prerequisite, that PRA must be a named party in the dispute for the arbitration agreement to be invoked. Contrary to Smith's interpretation of our decision, our reference to "their disputes" did not infer that arbitration proceedings could only occur if the subject of the dispute was limited to Smith and PRA. Rather, our reference to "their disputes" merely reiterated that only Smith and PRA could participate in an arbitration proceeding, regardless of whether the proceeding stemmed from a dispute pursued by Smith or a dispute pursued by PRA. To limit the arbitration clause in the manner proposed by Smith would conflict with the plain language of the Agreement, which expressly requires Smith and PRA to arbitrate any dispute or claim between Smith and PRA, and/or its agents, its affiliates, or J.C. Penney Corporation so long as the dispute related to Smith's account. The Agreement is silent on whether a party, here PRA, must be named as a defendant to invoke its rights under the Agreement. In fact, this court referenced the broad nature of the arbitration clause (what is arbitrable), but ultimately concluded that a demand by Smith or PRA was required before any dispute related to the account could be arbitrated, "even if that claim involves claims involving an agent of PRA." *Smith I*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344, at ¶ 20.

{¶ 31} Based on the foregoing, we reject Smith's position on appeal that, "as a second prerequisite, only disputes between PRA and Ms. Smith could be arbitrated." While we reiterate that Javitch does not have the contractual right to demand arbitration, our holding in *Smith I* does not invalidate the plain language of

the Agreement, which contemplates arbitration between Smith and PRA for claims pursued by Smith against PRA or its agents, so long as a valid demand is made by Smith or PRA.

{¶ 32} With this clarification in mind, we turn to the remaining issues presented by Javitch on appeal, including whether PRA was permitted to demand arbitration as a nonparty to Case No. CV-20-935178, and if so, whether Javitch was entitled to a stay and an order compelling arbitration between Smith and PRA once the principal's demand was filed.

{¶ 33} Regarding the first issue, Javitch summarizes its position as follows:

> Giving effect to the word "agents" in the arbitration agreement compels the conclusion that PRA has the right to demand arbitration — even if it is not a named party to the litigation — when the claims made are against its agents and when the claims relate to the account, as is the case here.

{¶ 34} After careful consideration, we find the pertinent language in the Agreement to be controlling. In this regard, the Agreement expressly sets forth the means by which Smith or PRA may start the arbitration process, stating:

> 1. The party who wants to arbitrate must notify the other party in writing. The notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to Synchrony Bank[.] * * * The party seeking arbitration must select an arbitration administrator, which can be either the American Arbitration Association (AAA) * * * or JAMS[.] If neither administrator is able or willing to handle the dispute, then the court will appoint an arbitrator.
>
> 2. If a party files a lawsuit in court asserting claim(s) that are subject to arbitration and the other party files a motion with the court to compel arbitration, which is granted, it will be the responsibility of the party asserting the claim(s) to commence the arbitration proceeding.

{¶ 35} Viewing the plain language of the foregoing provisions, we find no restrictive language in the Agreement to suggest PRA is incapable of enforcing its rights under the arbitration agreement in this case. All that is required to prompt Smith or PRA's right to demand arbitration under the Agreement is that "any dispute or claim" relate to the account. With that stated, however, we emphasize that the scope of PRA's rights under the Agreement is immaterial to our review in this matter. Rather, the resolution of this appeal concerns the scope of Javitch's rights under the Agreement, if any, as a nonsignatory agent.

{¶ 36} Accordingly, we turn to whether Javitch was entitled to enforce the arbitration provision or otherwise stay the proceedings based on PRA's written demand for arbitration. We address this issue with the understanding that (1) the arbitration provision is enforceable, (2) Smith's claims against Javitch related to Smith's account with PRA, and (3) PRA was entitled to demand arbitration under the unambiguous terms of the Agreement.

{¶ 37} Traditionally, federal courts applied the FAA only to signatory parties of an arbitration agreement. *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir.2001). However, this principle was modified by the Supreme Court in *Arthur Anderson L.L.P. v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). In *Carlisle*, the Supreme Court held that the FAA requires federal courts to apply state contract law to determine the "scope" of arbitration agreements, "including the question of who is bound by them." *Id*. at 630. As such, "whenever the relevant state law would make a contract to arbitrate a particular dispute

enforceable by a nonsignatory, that nonsignatory is entitled to request and obtain a stay under [Section 3 of the FAA] and an order to compel arbitration under [Section 4 of the FAA]." *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir.2014).

{¶ 38} When applying state law, our task is to "'determine how the state's highest court would rule.'" *In re Zimmer, NextGen Knee Implant Prods. Liab. Litigation*, 884 F.3d 746, 751 (7th Cir.2018), quoting *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir.2011). Pertinent to this case, Utah recognizes five circumstances in which a nonsignatory can enforce or be bound by an arbitration agreement (i) incorporation by reference, (ii) assumption, (iii) agency, (iv) veil-piercing/alter ego, and (v) estoppel. *Ellsworth v. Am. Arbitration Assn.*, 2006 UT 77, 148 P.3d 983, 989, fn.11 (2006).

{¶ 39} In this appeal, Javitch again argues that principles of agency prevent Smith from evading her obligation to arbitrate her claims through artful pleading. Javitch contends that "where an arbitrable claim is pled – that is, a 'dispute' within the scope of the agreement requiring arbitration — courts permit non-signatory agents to enforce the agreement against signatories to both compel arbitration and to stay the litigation." Javitch states as follows:

> All of the named defendants' allegedly wrongful acts related to their handling of Smith's account as agents of PRA, a signatory to the arbitration agreement. [U]nder the well-settled principle affording agents the benefits of arbitration agreements made by their principal * * * Javitch is entitled to petition the trial court to enforce Smith's agreement and require her to arbitrate her dispute.

{¶ 40} Javitch raised similar arguments in *Smith I*, claiming that the record sufficiently demonstrated that they were entitled to enforce the arbitration agreement based on alternative theories of agency, equitable estoppel, and/or intended-beneficiary status.  While this court acknowledged the pertinent authority governing these legal principles,[2] we rejected Javitch's arguments based on the express terms of the arbitration provision. We explained that

> "[u]nder Utah law, 'only parties to the contract may enforce the rights and obligations created by the contract.'" *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, 100 P.3d 1200, 1205-06 (Utah 2004), quoting *Wagner v. Clifton*, 2002 UT 109, 62 P.3d 440, 442 (Utah 2002).  In

---

[2] *See Smith I* at ¶ 14, citing *St. Pierre*, D.Nev. No. 2:15-cv-02415-JAD-NJK, 2016 U.S. Dist. LEXIS 162986, 6 (Nov. 22, 2016).  *See also Lagrone v. Advanced Call Ctr. Technologies, LLC*, W.D.Wash. No. C13-2136JLR, 2014 U.S. Dist. LEXIS 141497, 3 (Oct. 2, 2014) ("Accordingly, based on the available state guidance, the court predicts that, when faced with the question, the Utah Supreme Court would permit a non-signatory agent to enforce an arbitration provision in its principal's contract."); *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941 TS, 2020 U.S. Dist. LEXIS 58335, *3 (Apr. 1, 2020) ("Under agency theory, agents 'assume the protection of the contract which the principal has signed,' and they may 'compel arbitration of claims made against [them] by a signatory to the agreement.'"), quoting *Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp.3d 1265, 1274-1275 (D. Utah 2018).  *But see Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, 100 P.3d 1200, 1206 (Utah S.Ct. 2004) (Under Utah law, "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit."); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1297-1298 (10th Cir. 2017) (holding nonsignatory defendants could not compel plaintiff to arbitrate under Utah law); *Taylor v. Advanced Call Ctr. Technologies, LLC*, Case No. 17 C 1805, 2017 U.S. Dist. LEXIS 208888, *3 (Dec. 20, 2017) ("Utah Supreme Court precedent as interpreted by the Tenth Circuit makes clear that a nonsignatory's agency relationship with a principal does not authorize the agent to enforce a contractual term, such as an arbitration clause, for the agent's own benefit."); *Untershine v. Advanced Call Ctr. Technologies, LLC*, E.D. Wis. No. 18-CV-77, 2018 U.S. Dist. LEXIS 101399, *8 (June 18, 2018) ("[Defendant], as nonsignatory to the arbitration agreement, cannot compel [plaintiff] to arbitrate under agency theory."); *Haston v. Resurgent Capital Servs., L.P.*, 2022 U.S. Dist. LEXIS 176901, 9 (Interpreting *Fericks* as Utah's prevailing authority to preclude the defendant-non-signatory-agents from invoking the arbitration provision contained in the Account Agreement for their own benefit.).  Since the federal district court cases interpreting Utah arbitration law are merely persuasive authority, none are controlling.

rare circumstances, a third party can also enforce the contract, but "only if the parties to the contract clearly express an intention 'to confer a separate and distinct benefit' on the third party." *Bybee v. Abdulla*, 2008 UT 35, 189 P.3d 40, 49 (Utah 2008), quoting *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980)); *see also Hermansen v. Tasulis*, 2002 UT 52, 48 P.3d 235, 239 (Utah 2002) (a third party may enforce a contract provision only if "contracting parties clearly intended" to allow the third party to exercise rights under the contract), quoting *Oxendine v. Overturf*, 1999 UT 4, 1999 UT 4, 973 P.2d 417, 421 (Utah 1999)). But under no circumstances can a party "change or rewrite" the terms of an agreement to broaden the plain language — even in the face of the policy favoring arbitration. *Zions Mgmt. Servs. v. Record*, 2013 UT 36, 305 P.3d 1062, 1071 (Utah 2013), quoting *Ivory Homes, Ltd. v. Utah State Tax Comm.*, 2011 UT 54, 266 P.3d 751, 755 (Utah 2011))."

*Smith I*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344, at ¶ 18, quoting *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057-1058 (10th Cir.2018). Applying the foregoing principles, we concluded that Javitch had no contractual right to enforce the arbitration provision, notwithstanding their status as PRA's agent. *Id.* at ¶ 20 ("Javitch is not contractually entitled to demand arbitration under the limited scope of agency law as contemplated under Utah law.").

{¶ 41} Throughout this appeal, Javitch has routinely attempted to distinguish their inability to demand arbitration from its right to compel arbitration under the agreement. However, our plain reading of the Agreement suggests otherwise. As previously discussed, the arbitration provision expressly states that only Smith or PRA may demand arbitration, stating "if "either you [Smith] or we [PRA through assignment from Synchrony Bank] make a demand for arbitration, you and we must arbitrate any dispute or claim * * *." Likewise, the Agreement unambiguously sets forth restrictions concerning motions to compel arbitration

during a pending lawsuit, stating that if either party to the Agreement files a lawsuit asserting claims that are subject to arbitration, *the other party* to the Agreement may file a motion to compel arbitration with the court. The Agreement does not contain any language to suggest that an agent or affiliate of PRA is entitled to file a motion to compel arbitration on PRA's behalf. Stated another way, the discretionary right to (1) demand arbitration in writing, or (2) file a motion to compel arbitration during a pending lawsuit, is contractually limited to Smith or PRA.

{¶ 42} Bound by our resolution of the analogous arguments raised in *Smith I*, we find the pertinent language in the Agreement equally impairs Javitch's ability to compel arbitration. *See, e.g., Sterling Contracting, L.L.C. v. Main Event Entertainment, L.P.*, 2020-Ohio-184, 141 N.E.3d 1073, ¶ 17 (8th Dist.), citing *Spalsbury v. Hunter Realty*, 8th Dist. Cuyahoga No. 76874, 2000 Ohio App. LEXIS 5552 (Nov. 30, 2000) ("[T]he appellant lacks standing to enforce the arbitration agreement as it was not a party thereto * * *."). Furthermore, PRA's written demand for arbitration does not alter Javitch's rights under the contract. Javitch has cited no case law to suggest that PRA was capable of conferring standing to Javitch by granting them authorization to petition the court in the demand letter. Nor did Smith contractually agree to allow PRA to designate its rights under the Agreement. As recognized in *Smith I*, neither party to the Agreement was entitled to "change or rewrite" the terms of an agreement to broaden its plain language. *Smith I* at ¶ 18.

{¶ 43} Finally, we find the trial court did not err in denying Javitch's request to stay the proceedings pending arbitration between PRA and Smith. As previously

discussed, Javitch has no contractual right to enforce the arbitration provision under Utah law. *See Carlisle*, 556 U.S. at 632, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement."). Moreover, we find no merit to Javitch's assertion that the trial court was required to issue a stay once PRA filed a demand letter on April 4, 2022. In this case, PRA has not attempted to intervene in the pending lawsuit or otherwise exercise its rights under the Agreement. Although Javitch has submitted evidence indicating that PRA sent a demand letter to Smith, the contents of the letter do not comply with the terms of the arbitration provision. In particular, the demand letter required Smith to "submit the above captioned putative class action litigation to arbitration on an individual basis before the American Arbitration Association (the 'AAA'), or if you would prefer, before JAMS." In contrast, the arbitration provision states that *"[t]he party seeking arbitration* must select an arbitration administrator, which can be either the American Arbitration Association (AAA) * * * or JAMS[.]" (Emphasis added.) Neither PRA nor Smith have made a valid demand for arbitration, nor has either party under the Agreement sought to compel arbitration. Accordingly, we are unable to conclude that the trial court erred by denying Javitch's motion to compel or otherwise stay the litigation pending arbitration between PRA and Smith.

{¶ 44} The first assignment of error is overruled.

## B. Class-Action Provision

{¶ 45} In the second assignment of error, Javitch argues the trial court erred in denying its motion to strike class allegations. Javitch contends that under the express terms of the Agreement, "Smith's class claims should have been stricken and she should have been ordered to arbitrate her claims on an individual basis with PRA."

{¶ 46} As stated, Javitch is a nonsignatory to the Agreement and, pursuant to our mandate in *Smith I*, has no contractual right to enforce the terms of the Agreement between Smith and PRA. Consistent with our application of ordinary contract and agency principles, we find Javitch equally has no standing to enforce the class-action waiver provision. Significantly, the disputed provision prevents Smith from participating in a class, representative- or private-attorney general action *against PRA*. The provision contains no language to suggest that Smith is precluded from pursuing class claims against an agent of PRA. Nor does the provision contain language to suggest that PRA's agents have the contractual right to enforce the class-action waiver on PRA's behalf. Accordingly, the trial court did not err in denying Javitch's motion to strike class allegations.

{¶ 47} The second assignment of error is overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE ATTACHED OPINION)

MARY EILEEN KILBANE, J., CONCURRING IN JUDGMENT ONLY:

{¶ 49} I respectfully concur in judgment only because this is before us on a limited remand from *Smith v. Javitch Block, L.L.C.*, 8th Dist. Cuyahoga No. 110154, 2021-Ohio-3344 ("*Smith I*"). *Smith I* is the law of the case; the appellants appealed the trial court's denial of arbitration and the class provision. *Smith I* affirmed the trial court's denial of the motion to compel arbitration and the denial of the motion to strike the class provision. This appeal is the appellants' attempt to have a second bite of the apple. The discussion and analysis of arbitration requirements and Utah law are superfluous.